UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| **GREENPOINT AG HOLDINGS, LLC,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**MCKASKLE FARMS, et al.,** )<br>)<br>**Defendants.** ) | Case No. 1:24-cv-32-SNLJ |

## MEMORANDUM AND ORDER

Plaintiff GreenPoint Ag Holdings, LLC filed this lawsuit against defendants Stephen F. McKaskle ("McKaskle"), M.E.G. Farms, LLC, and McKaskle Farms (collectively, the "Defendants"), for the unpaid balance of principal and interest due under a promissory note dated March 15, 2022, payable to GreenPoint in the original principal amount of $412,657.45 (the "Promissory Note"). Plaintiff moved for summary judgment on December 18, 2024 [Doc. 22]. Defendants have not responded, and the time for doing so has passed. The parties were referred to alternative dispute resolution on March 3, 2025, but the parties failed to file the designation of neutral/compliance report that was due on March 17.

**I.     Factual Background and Procedural History**

The following facts have not been disputed by defendants. Beginning in 2016, defendants purchased agricultural inputs on credit from GreenPoint pursuant to the terms of a "Customer Credit Application and Agreement." During the 2021 growing season, defendants again purchased agricultural inputs on credit from GreenPoint. The

Defendants failed to pay for the 2021 credit purchases by the end of 2021. Greenpoint engaged counsel, who demanded payment from the defendants. McKaskle also hired an attorney. Exchanges between the parties' attorneys resulted in the defendants' execution of a "Promissory Note" that memorializes the outstanding balance of principal and interest due on the defendants' open credit account as of March 15, 2022, in the total amount of $412,657.45.  It requires payment of the balance via consecutive monthly installments of $10,000.00 until maturity on February 15, 2026. Although the defendants made thirteen and one-half installment payments, they subsequently defaulted on the monthly payments due under the terms of the Promissory Note. On September 19, 2023, GreenPoint gave notice of acceleration of the balance due under the Promissory Note and demanded payment.

In response to the notice of acceleration and demand for payment of the balance due on the Promissory Note, McKaskle and his banker asked GreenPoint to suspend his monthly payments and not to commence litigation because of potential investments in his business from two outside investor groups.  GreenPoint agreed to suspend the monthly payments for three months and to forbear from filing suit on the unpaid balance of the Promissory Note from October 1, 2023 until December 31, 2023. The defendants agreed to pay the Promissory Note in full by December 31, 2023. The parties' agreement was memorialized in a Forbearance Agreement dated October 1, 2023 and Stipulation for Entry of Judgment. However, during and at the end of the forbearance period, the defendants failed to make any additional payments on the Promissory Note.

The Promissory Note remains in default. The outstanding balance due on the Promissory Note through December 31, 2024 totals $344,511.12, comprised of principal in the amount of $236,216.63, prior finance charges accrued on the principal balance of the account before March 15, 2022, of $41,440.82 (the interest accrual on the date of the Promissory Note), interest on the principal balance of the Promissory Note of $48,271.92 from March 15, 2022 through February 15, 2024 (the interest accrual contemporaneous with the filing of the complaint herein), and additional interest from February 16, 2024 through December 31, 2024 of $18,581.75.  Interest continues to accrue on the principal balance of the Promissory Note after December 31, 2024 at the rate of nine percent (9%) per annum ($58.25 per day) until paid pursuant to the terms of the Promissory Note.

GreenPoint filed its amended complaint against defendants on March 28, 2024. In the amended complaint, GreenPoint includes one count, "Breach of Contract – Promissory Note," and alleges that defendants, jointly and severally, are liable for breach of the payment terms of the Promissory Note. Defendants answered on April 11, 2024. The answer admitted that McKaskle applied for a commercial credit account with GreenPoint and to the purchase of agricultural inputs during the growing season of 2016. Defendants either denied or claimed to lack sufficient information to either admit or deny the remaining allegations of the amended complaint.

GreenPoint then sent interrogatories and requests for production of documents as well as requests for admission to defendants. GreenPoint also sent separate requests for admission to McKaskle. Defendants have not responded to the interrogatories and

requests for production of documents. Defendants and McKaskle responded to the requests for admission. McKaskle in his response to the requests for admission admits to signing the Credit Application and the Promissory Note. Defendants in their response to the requests for admission admit to making monthly payments due under the Promissory Note for thirteen months and a partial payment toward the fourteenth monthly payment. Defendants further admitted that no other payments were made pursuant to the Promissory Note.

## II.  Summary Judgment

Plaintiff moves for summary judgment on its breach of contract claim.

### A.  Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). "Where parties file cross-motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law." *Martin v. United Collections Bureau, Inc.*, No. 4:14-CV-804-JAR, 2015 WL 4255405, at *2 (E.D. Mo. July 14, 2015) (citing *Husinga v. Federal–Mogul Ignition Co.,* 519 F.Supp.2d 929, 942 (S.D. Iowa 2007)). "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." *Wermager v. Cormorant Township Bd.,* 716 F.2d 1211, 1214 (8th Cir.1983). In determining the appropriateness of summary judgment, "the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Bingaman v. Kansas City Power & Light Co.,* 1 F.3d 976, 980 (10th Cir. 1993) (quoting *Anderson,* 477 U.S. at 251–52)).

The parties do not address what substantive law applies in this case.  The Promissory Note states it "shall be governed and construed according to the statutes and laws of the State of Missouri from time to time in effect." [Doc. 16-2 at 3.]  The Forbearance Agreement states that Arkansas law applies to it [Doc. 16-3 at 3.] The

5

original Customer Credit Application and Agreement states that the laws of the state where the agreement was executed apply, and it appears the Application was executed in Missouri. There do not appear to be any significant differences between Missouri and Arkansas law, however, for the purposes of the motion for summary judgment.

### B. Discussion

Plaintiff brings just one count, "Breach of Contract – Promissory Note," against defendants. In Missouri, "The elements of a breach of contract action are (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Goldsmith v. Lee Enterprises, Inc.*, 57 F.4th 608, 612 (8th Cir. 2023) (citing *Keveney v. Missouri Military Academy*, 304 S.W.3d 98, 104 (Mo. banc 2010)).

It is undisputed that (1) McKaskle signed a Customer Credit Application with GreenPoint and received credit from GreenPoint, (2) defendants signed a Promissory Note on March 15, 2022 for an outstanding balance due on Defendants' open credit account in the amount of $412,657.45, (3) pursuant to the terms of the Promissory Note, defendants were required to make monthly payments of $10,000 starting in February 2022 until maturity on February 15, 2026, (4) defendants made payments totaling $135,000 and then failed to make any further payments, (5) defendants are in default on the Promissory Note, (6) defendants have made no payments on the Promissory Note since making the partial payment which was due in May 2023, and (7) defendants' debt to GreenPoint under the Promissory Note totals $344,511.12 through December 31, 2024.

Defendants' answer to the amended complaint and responses to requests for admission suggest that defendants intended to argue that they should not be held liable for the balance of $344,511.12 due on the Promissory Note (through December 31, 2024) because McKaskle had "chemo brain" and was in a state of "mental fog" when he signed the Forbearance Agreement and Stipulation for Entry of Judgment on or around October 10, 2023.  However, the Forbearance Agreement and Stipulation do not alter the interest rate, principal balance, or total indebtedness due GreenPoint under the terms of the Promissory Note.  Further, McKaskle signed the Promissory Note on March 15, 2022 while represented by counsel, and that Promissory Note predates by more than a year the chemotherapy which McKaskle alleges led to his "mental fog."  The defendants made 13 and one-half monthly installment payments on the Promissory Note, and McKaskle signed the Forbearance Agreement affirming the indebtedness in the Promissory Note with no protestations of a lack of understanding of the terms of any document he signed or of cognitive impairment.

Critically, defendants have not responded to the motion for summary judgment. The statement of facts filed by plaintiff in support of its summary judgment motion is therefore admitted for the purposes of summary judgment under Local Rule 4.01(E). Notably, although the parties were ordered to Alternative Dispute Resolution on March 3, no party has filed the "Designation of Neutral/Conference Report" that was due on March 17, 2025 [*see* Doc. 26].

### IV. Conclusion

Summary judgment will be granted to the plaintiff.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for summary judgment [Doc. 22] is GRANTED.

**IT IS FURTHER ORDERED** that plaintiff shall file a proposed judgment within 14 days.

Dated this  20th  day of March, 2025.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE